## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.R. and J.M.**

**No. 20-0119** (Braxton County 17-JA-88 and 17-JA-89)

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.C., by counsel Bernard R. Mauser, appeals the Circuit Court of Braxton County's January 9, 2020, order terminating his parental and custodial rights to A.R. and J.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, David Karickhoff, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights upon insufficient evidence to establish that he failed to fully comply with the terms and conditions of his improvement period, without complying with the proper procedures for disposition, and without considering a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following the filing of a child abuse and neglect petition in February of 2019, petitioner stipulated to allegations that he failed to provide A.R. and J.M., ages one and four, respectively, with "a fit, apt, and suitable home" and that he was currently residing with a relative who was a registered sex offender. The circuit court adjudicated petitioner as an abusing parent and granted his motion for a post-adjudicatory improvement period. During the improvement period, petitioner was required to maintain a suitable home for the children, maintain gainful

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

employment, participate in and complete parenting and adult life skills classes, submit to random drug and alcohol screenings, and participate in supervised visitations with the children.

The circuit court held dispositional hearings in October and November of 2019. The DHHR presented testimony from petitioner's service providers, and petitioner testified. During the October hearing, petitioner proffered that he resided at a friend's residence. However, the DHHR called that individual as a witness during the November hearing, and petitioner's friend testified that petitioner stayed with him only two nights in late October of 2019. Petitioner's parenting and adult life skills instructor testified that petitioner was compliant with services until August of 2019, at which point she lost contact with him. Although petitioner testified that he could not reach the instructor due to a change in her telephone number, the instructor testified that her phone number had not changed since the initiation of services. The visitation supervisor testified that petitioner had positive visitations with the children until mid-July of 2019. At that time, petitioner cancelled two consecutive visits due to a conflict with his work schedule. Then, near the beginning of August of 2019, the supervisor lost contact with petitioner and was unable to schedule additional visits. Petitioner admitted that he did not have a fit and suitable home for the children at the time of disposition. Petitioner also testified that he quit a job during the improvement period but was rehired and later fired from that job. Petitioner explained that he obtained new employment the week prior to the November dispositional hearing and would be working forty hours per week at a rate of nine dollars per hour.

Ultimately, the circuit court found that petitioner "failed to comply with the services offered to him by the [DHHR] including parenting, adult life skills, drug and alcohol screening, and visitations with his children" since "July of 2019." The circuit court further found that petitioner failed to maintain full-time employment during the proceedings and failed to pay child support as ordered. Based on petitioner's failure to comply with the terms of his improvement period, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the foreseeable future. The circuit court concluded that termination of petitioner's parental and custodial rights was in the best interest of the children. The circuit court memorialized its decision in its January 9, 2020, order. Petitioner now appeals that order.[2]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when,

_____

[2]The mother's parental rights were terminated during the proceedings below. She appealed, and this Court affirmed the circuit court's order. *See In re A.R. and J.M.*, No. 19-0336, 2019 WL 5856018 (W. Va. Nov. 8, 2019) (memorandum decision). According to the parties, the permanency plan for the children is adoption by their maternal great-grandparents.

although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights rather than imposing a less-restrictive dispositional alternative, such as the termination of only his custodial rights. Petitioner challenges the circuit court's finding that "there was no reasonable likelihood that the conditions of neglect and abuse could be corrected in the foreseeable future" and asserts that, considering his new employment, it was likely that he would find housing in the near future. Petitioner also argues that the circuit court unjustly terminated his parental rights due, primarily, to his lack of financial resources to obtain suitable housing. We disagree.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon a finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. The circuit court may find that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

West Virginia Code § 49-4-604(d)(3). Critical to the circumstances of this case, petitioner did not "follow through with a reasonable family case plan." Multiple witnesses testified that they lost contact with petitioner late in his post-adjudicatory improvement period for a period of approximately two months. During this time, petitioner was not complying with the terms of his improvement period, including parenting and adult life skills classes, random drug screening, and, perhaps most importantly, supervised visitations with his children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). On appeal, petitioner argues that his failure to participate "was due to extenuating circumstances beyond [his] control" but he provides no explanation as to the nature of those circumstances. Indeed, during the proceedings, petitioner provided excuses for his nonparticipation, such as an alleged inability to

contact the service providers; however, such claims were easily refuted by the witnesses. Petitioner provided no sensible explanation for why he ceased his participation in his case plan below and, likewise, provides none on appeal.

Moreover, petitioner fails to acknowledge that completion of the terms of his family case plan was his responsibility. *See* W. Va. Code § 49-4-610(4)(A) ("[T]he respondent shall be responsible for the initiation and completion of all terms of the improvement period."). Petitioner agreed to the terms of his family case plan and accepted responsibility to obtain employment and suitable housing for the children as a condition of the improvement period. Nevertheless, petitioner argues that his finances limited his ability to obtain suitable housing and cites the definition of "Neglected child" in support of that argument. That definition provides:

> A Neglected child means a child . . . [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, *failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian*.

W. Va. Code § 49-1-201 (emphasis added). We agree with petitioner that "the definition of a [N]eglected child . . . excludes circumstances due to financial" shortcomings. However, petitioner clearly misapplies this definition. West Virginia Code § 49-4-601(i) sets forth that, "[a]t the conclusion of the adjudicatory hearing, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent."[3] While a lack of financial means is a potential defense from adjudication as an abusing parent, petitioner waived his right to an adjudicatory hearing and his opportunity to present evidence that he lacked the financial means to obtain suitable housing. Petitioner also argues that "the actions of a parent may be such that they forfeit the right to raise their child, [but] such forfeiture must be based upon such acts or conditions that meet the statutory requirements" of West Virginia Code § 49-4-601. Yet, petitioner admitted to neglecting the children through his stipulation, which meets and satisfies these statutory requirements. Additionally, due to petitioner's failure to follow through with the family case plan, the circuit court did not err in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. The circuit court was presented evidence that petitioner ceased participation in services, could not maintain employment, failed to obtain housing or to show any progress to that end, and failed to pay his meager child support obligation of fifty dollars per month. Based on this evidence, we find no error in the circuit court's conclusion that there was no reasonable likelihood that the conditions of abuse and

---

[3]For clarity, a respondent parent is "abusing [or] neglecting" when their conduct "has been adjudicated by the court to constitute abuse or neglect as alleged in the petition charging child abuse or neglect." *See* W. Va. Code § 49-1-201. "Child abuse and neglect" is further defined as "any act or omission that creates an abused child or a neglected child as those terms are defined in [W. Va. Code § 49-1-201]." *Id.*

neglect could be substantially corrected in the near future and that termination of petitioner's parental and custodial rights was in the children's best interests.

Finally, petitioner argues that the circuit court erred in terminating his parental and custodial rights rather than imposing a less-restrictive dispositional alternative, such as the termination of his custodial rights only. In doing so, petitioner acknowledges that "while at present there may not exist conditions which would lead to the Court immediately returning" the children to his custody but argues that the conditions could change "within a reasonable period of time." However, petitioner was provided a reasonable period of time to remedy the conditions of abuse and neglect and, not only failed to do so, but completely failed to participate in one-third of his improvement period. As this Court has previously held,

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. In considering the young age of these children and petitioner's lack of participation in the case plan, there was no error in the circuit court's conclusion that petitioner should not be afforded additional time. Moreover, we have also held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the record supports the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future, petitioner was not entitled to a less-restrictive dispositional alternative, and there is no error in the termination of his parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 9, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison